UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE B. COLLINS, Independent Administrator of the Estate of ROBERT L. COLLINS, Deceased, et al., | No: 03 C 2958 |
| Plaintiffs, | Judge John W. Darrah |
| v. | consolidated with |
| THE UNITED STATES OF AMERICA, | No. 03 C 2966 |
| | No. 03 C 2998 ✓ |
| Defendant. | No. 03 C 3162 |
| | No. 03 C 3166 |

## MEMORANDUM OPINION AND ORDER

Numerous parties brought suit in state court as a result of the collision of two aircraft in mid-air near the Waukegan Regional Airport. These parties include: (1) Aviation Training Enterprises of Illinois, Inc., d/b/a American Flyers; (2) American Flyers, Inc.; (3) Scott Chomicz; (4) Christine B. Collins, Independent Administrator of the Estate of Robert L. Collins; (5) Rise'l Barkhoff, individually and as Special Administrator of the Estate of Herman F. Luscher; (6) Edward J. Hock, Independent Administrator of the Estate of Sharon Hock; (7) Cancer Treatment Centers of America, Inc.; (8) Midwestern Regional Medical Center, Inc.; (9) Patient First, S.C.; and (10) Employers Insurance of Wausau. For the purposes of this motion, these parties are collectively referred to as "Plaintiffs."

Thereafter, some Plaintiffs filed claims against the United States of America ("the Government") under the Federal Tort Claims Act ("FTCA") in federal court. Pursuant to a contract with the Federal Air Administration ("FAA"), Midwest Air Traffic Control Services, Inc. ("Midwest") a private corporation, operated the control tower that was in contact with the

two planes prior to collision. Plaintiffs contend the Government committed numerous acts of negligence regarding the operation of the air traffic control tower at the Waukegan Airport. The state court cases were removed and consolidated into the present action. Midwest and Gregory Fowler, the air traffic controller allegedly responsible for the aircraft which collided, were granted leave to intervene as Defendants. *United States v. Collins*, 03 C 2958, 2004 WL 407016 (N.D. Ill. Jan. 28, 2004).

Most of the claims against the Government fall into three categories of allegations: (1) that the Government negligently administered and oversaw the Waukegan Airport air traffic control tower; (2) that the Government should be liable for the negligence of the air traffic controller; and (3) that the Government negligently failed to install proper radar or other airplane detection equipment at the Waukegan Airport air traffic control tower, which was in communication with both planes. Plaintiffs specifically plead in the Complaint

> 28. On and before February 8, 2000, defendant, THE UNITED STATES OF AMERICA, was negligent, in breach of its aforementioned duty, in that the FAA personnel acting at all times were negligent, in that they . . .
>
> c. failed to install a Terminal Automated Radar Display and Information System (TARDIS) at the Waukegan Tower air traffic control tower, which would have given the FAA air traffic controller knowledge of the locations of [the two planes] when they were in the vicinity of the airport, despite it knowing or in the exercise of reasonable care should have known that such a system was necessary to company [sic] with all of its requirements under all applicable statutes, codes, directives, and orders . . . .

The claims against the Government are the only claims which support original federal subject matter jurisdiction. The remaining claims are brought in federal court pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367. Presently before the Court is the Government's Motion to Dismiss All Consolidated Cases pursuant to Federal Rule of Civil

2

Procedure 12(b)(1) and the FTCA – specifically, pursuant to the independent contractor exception, 28 U.S.C. § 2671, and the discretionary function exception, 28 U.S.C. § 2680(a), of the FTCA.

## LEGAL STANDARD

Generally, in reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (*Capitol Leasing*). Documents which are referred to in a complaint and are central to a claim, as well as any matters of public record, may be considered on a motion to dismiss. *See Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002); *Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994). A plaintiff is not required to plead the facts or elements of a claim. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

The Government's 12(b)(1) motion challenges subject matter jurisdiction. In reviewing a motion to dismiss under Rule 12(b)(1), a court may "look behind the plaintiff's allegations and make factual findings for purposes of assessing its subject matter jurisdiction." *Palay v. United States*, 349 F.3d 418, 424-25 (7th Cir. 2003) (*Palay*). The Seventh Circuit has recently

questioned whether these exceptions are jurisdictional and can be examined pursuant to Federal Rule of Civil Procedure 12(b)(1) or, instead, are aspects of a plaintiff's statutory right to relief and should be examined under Rule 12(b)(6). *Palay*, 349 F.3d at 424. The Seventh Circuit, though, noted that it "would be obliged to defer to [a district court's] findings of fact" concerning the jurisdictional issues. *Palay*, 349 F.3d at 424-25.

However, consideration of this evidence will not convert the Government's motion regarding federal jurisdiction to a motion for summary judgment. *Capitol Leasing*, 999 F.2d at 191 (7th Cir. 1993).

## BACKGROUND

The facts, for the purposes of this motion, are as follows. In February 2000, two aircraft collided in mid-air near the Waukegan Regional Airport. The collision occurred when a plane piloted by either Collins or Luscher, both licensed pilots, flew into a plane operated by a student pilot, Hock, causing both planes to collide and crash. At the time of the accident, both airplanes were receiving air traffic control services from the Waukegan Airport air traffic control tower, operated by Midwest pursuant to the contract with the Government.

The Waukegan Tower was a "visual flight rules" tower. Visual flight rules impose responsibility on the pilots to locate each other and avoid collisions. Towers operating pursuant to these rules do not require a terminal radar display. A terminal radar display is a small display mounted in the control tower which allows tower controllers to view data from a nearby FAA radar. Waukegan Airport did not have a terminal radar display.

4

One type of terminal radar display is TARDIS, an uncertified system which uses a standard, off-the-shelf personal computer and monitor. Installation of TARDIS costs between $25,000.00 and $30,000.00.

The FAA's general policy prior to the collision was not to install terminal radar displays unless the airport had over 30,000 itinerant operations per year. Once an airport met this criterion, the airport could be placed on a list to receive radar equipment. However, placement on the list did not guarantee that equipment would be provided; that decision was made by the FAA. Waukegan Regional Airport had over 300,000 itinerant operations annually and was eligible for placement on the list before the collision.

TARDIS was installed at nine airports before the collision – some after requests from individual Congressmen and Senators. Steve Brown, vice-president of Operations Planning for the Air Traffic Organization of the FAA, testified that "[p]rimarily Congressional interest" was the factor that caused the FAA to install TARDIS despite other installation concerns. Monty Belger, former acting deputy administrator for the FAA, testified that whether an airport tower received TARDIS depended on, in part, "how badly do they want it."

A TARDIS system was installed at Chicago's Meigs Field, a visual flight rules airport, within six months after a mid-air collision at that airport. TARDIS was installed at Waukegan Airport in July 2000, five months after the mid-air collision in this case.

## ANALYSIS

The Government is generally immune from suits for money damages under the principle of sovereign immunity. The Government, though, has enacted a broad waiver of that immunity through the FTCA, which authorizes suits against the Government for money damages "for

injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable . . . ." 28 U.S.C. § 1346(b); *Calderon v. United States*, 123 F.3d 947, 948 (7th Cir. 1997) (*Calderon*). This "waiver of immunity is far from absolute; many important classes of tort claims are excepted from the [FTCA's] coverage." *Calderon*, 123 F.3d at 948. One such exception to the waiver of sovereign immunity is the discretionary function exception.

The discretionary function exception provides that the FTCA does not apply to:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or **based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty** on the part of a federal agency or an employee of the Government, whether or not the discretion be abused.

28 U.S.C. § 2680(a) (emphasis added). This exception applies in two circumstances: (1) when the Government actor properly follows a mandatory Government directive, see *Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (*Berkovitz*); and (2) when the Government actor properly exercises his discretion pursuant to a Governmental directive, *Calderon*, 123 F.3d at 949.

Whether the exception applies depends on two steps. *Calderon*, 123 F.3d at 949. The first step determines whether the action taken was discretionary or mandatory by examining the relevant statutes, regulations, and policies. *Calderon*, 123 F.3d at 949. If the action taken was mandatory, then the Government is shielded from liability when the act is performed in accordance with the statute, regulation, or policy. *Berkovitz*, 486 U.S. at 536.

However, if no specific directive exists and the action taken involves the exercise of discretion, the Government is only shielded from liability if it meets the second step by having properly exercised its discretion. *Calderon*, 123 F.3d at 949. A discretionary decision is only shielded from FTCA liability if it is susceptible to policy judgments which involve the exercise of "social, economic, and political" judgments. *Calderon*, 123 F.3d at 949 (quoting *Gaubert*, 499 U.S. at 323). A discretionary decision that does not involve policy considerations is not shielded from liability; instead, the act must "be based on the purposes that the regulatory regime seeks to accomplish." *Gaubert*, 499 U.S. at 325 n.7. Also, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.

"As the Supreme Court noted in *Gaubert*, however, we presume that the actions are grounded in public policy in cases where the statute or regulations allow the government agent to exercise discretion . . . ." *Calderon*, 123 F.3d at 950. Therefore, a plaintiff must raise allegations that demonstrate the challenged conduct is not "grounded in the policy of the regulatory scheme." *Gaubert*, 499 U.S. at 324-25.

The issue is then whether the FAA's decision not to provide Waukegan Regional Airport, a visual flight rules airport, with TARDIS qualifies for exemption from the FTCA under the second step of the discretionary function test. Thus, the key inquiry is whether the FAA's judgment in this regard is grounded in policy judgments involving the exercise of social, economic, or political judgments.

Midwest and Fowler contend that the Government's decision was not grounded in public policy considerations because, in part, the FAA chose to install TARDIS at some facilities, including Chicago's Meigs Field, based upon congressional lobbying and public criticism resulting from prior accidents. According to Midwest and Fowler, once the decision was made to install TARDIS at some but not all eligible airports, the Government cannot argue that the basis for its decisions are protected pursuant to the discretionary function exception.

In support of this proposition, Midwest and Fowler cite *Cope v. Scott*, 45 F.3d 445 (D.C. Cir. 1995) (*Cope*). There, the Government was responsible for maintaining a busy parkway which became extremely slick for vehicular traffic when wet. *Cope*, 45 F.3d at 446-47. The Government decided to place traffic control signs throughout the parkway but failed to place a "slippery when wet" warning sign at one particularly hazardous portion. *Cope*, 45 F.3d at 447, 452. The Government contended that the placement of warning signs implicated public policy concerns regarding aesthetics of the parkway. *Cope*, 45 F.3d at 452. The court disagreed, stating that:

> With respect to the aesthetic considerations, while we acknowledge the [Government's] desire to maintain the park in as pristine a state as possible, the [G]overnment has failed to demonstrate how such a desire affects the placement of traffic signs on [the parkway]. Indeed, the [G]overnment's argument is difficult for us to accept in view of the fact that, including the "slippery when wet" signs, no less than "twenty-three traffic control, warning, and informational signs" already exist on the half-mile stretch of road bracketing the curve where the accident occurred – a stretch of road that carries 20,000 vehicles daily. . . . We agree that in certain circumstances, decisions will be exempt under the FTCA because they involve difficult policy judgments balancing the preservation of the environment against the blight of excess signs. But this is not one of those circumstances. [The parkway] is not the Grand Canyon's Rim Drive, not Shenandoah's Skyline Drive. Here, the [Government] has chosen to manage the road in a manner more amenable to commuting through nature than communing with it. Having done so, and having taken steps to warn users of dangers inherent in that use, the [Government] cannot argue that its failure to ensure that those steps are effective involves protected "discretionary" decisions."

*Cope*, 45 F.3d at 452.

The Government's decision to install TARDIS at some airports is similar to the Government's actions in *Cope*. The Government asserts that its decision to install TARDIS at some eligible facilities, either through the expenditure of a regional FAA authority's discretionary funds or at a third-party's expense, does not demonstrate that the Government contradicted its own policy regarding TARDIS and that it objected only to the use of national appropriations, which were subject to Congressional oversight, to pay for TARDIS. However, while the Government contends it chose not to install TARDIS based upon budgetary and operational concerns, the Plaintiffs have pled and presented facts considered for purposes of demonstrating subject matter jurisdiction that are contrary to the Government's assertions.

"[T]he discretionary function exception applies only where the question is not negligence but social wisdom, not due care but political practicability, not reasonableness but economic expediency." *Cope*, 45 F.3d at 450 (internal quotations and citations omitted).

9

Further, "where jurisdictional issues are inextricably intertwined with the merits of the case it is proper for the court to deny a motion to dismiss . . . for want of subject matter jurisdiction on the basis that there are genuine issues of fact, the resolution of which will not only affect jurisdiction but also the very merits of the case." *Elektra Indus., Inc. v. Honeywell, Inc.*, 58 F.R.D. 118, 120 (N.D. Ill. 1973) (citing *Land v. Dollar*, 330 U.S. 731 (1947)); *see also Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 361 n.8 (7th Cir. 1995).

Based on the above, the discretionary function exception has not been established for jurisdictional purposes only; and subject matter jurisdiction is found to exist in this Court.

Another exception to the Government's waiver of sovereign immunity for tort actions is the independent contractor exception. Under the FTCA, the Government is only liable for torts "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). As used in § 1346(b), an employee of the Government includes "employees of any federal agency" but excludes "any contractor with the United States." 28 U.S.C. § 2671; *Quilco v. Kaplan*, 749 F.2d 480, 482-83 (7th Cir. 1984) (*Quilco*).

"[W]hen the relationship between the [G]overnment and a person is fixed by contract, the distinction between an employee and independent contractor turns 'on the absence of authority in the principal to control the physical conduct of the alleged employee in the performance of the contract.'" *Quilco*, 749 F.2d at 483 (alterations omitted) (quoting *Logue*, 412 U.S. at 527). "A critical factor in distinguishing an [employee] from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *United States v. Orleans*, 425 U.S. 807, 814 (1976) (*Orleans*) (quoting *Logue*, 412 U.S. at 528). Thus, the key

10

question is not whether Midwest or Fowler complied with federal standards but "whether its day-to-day operations are supervised by the Federal Government." *Orleans*, 425 U.S. at 815. Other relevant considerations include whether the Government has authority to make personnel decisions and whether Midwest's finances were controlled by the Government. *Alinsy v. United States*, 2001 WL 1095015, at *4 (citing *Peoples Gas*, 1990 WL 129359, at *4).

These factors and the facts that may or may not support this exception to the FTCA are also inextricably intertwined with the merits of the case. Therefore, the independent contractor exception has not been established for jurisdictional purposes only; and subject matter jurisdiction is found to exist in this Court on that basis.

## CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss Consolidated Cases is denied.

Date: April 19, 2005

JOHN W. DARRAH, Judge
United States District Court